IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MAE CAMERON, individually and as representative for a class of similar Montanans,<br><br>Plaintiffs,<br><br>vs.<br><br>THOMSON INTERNATIONAL, INC.,<br><br>Defendant. | CV 21-17-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff Mae Cameron ("Cameron") filed this putative class action against Thomson International, Inc. ("Thomson") alleging that she and approximately 63 other Montanans contracted a Salmonella infection after consuming contaminated onions that were grown, packed and sold by Thomson. (Doc. 7.)

Presently before the Court is Thomson's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative to transfer pursuant to 28 U.S.C. § 1406(a). (Doc. 2.)

Having considered the parties' submissions, the Court **RECOMMENDS** Thomson's Motion to Dismiss for lack of personal jurisdiction be **GRANTED**.

/ / /

/ / /

1

I.   FACTUAL BACKGROUND

"In ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider declarations, discovery materials, and uncontroverted allegations in the complaint." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 WL 6689572, *3 (E.D. Cal. Oct. 30, 2015) (citing *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 714 (C.D. Cal. 1996)). Therefore, for purposes of the instant motion, the Court accepts as true the uncontroverted facts from Cameron's Complaint. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court also considers the declaration of Jack Stewart (Doc. 4) and the discovery materials appended to Cameron's response (Docs. 12-1; 12-2.)

Cameron is a citizen of and is domiciled in Park County, Montana. (Doc. 7 at ¶ 1.)

Thomson is a California corporation with its principal place of business in Bakersfield, California. (*Id.* at ¶ 2.) Thomson is a family owned California farm that sells most of its products through independent wholesalers from its facility in Bakersfield, California. (Doc. 4 at ¶ 16, 19.) Thomson does not deliver or ship the produce it sells to the wholesalers. (*Id.* at ¶ 19.) Instead, the produce is provided to the purchasers FOB at Thomson's Bakersfield, CA facility, who make

their own arrangements to pick up and transport the produce. (*Id.*) Occasionally Thomson delivers farm produce to customers in the Los Angeles area. (*Id.*)

In 2020, Thomson entered into a Growing, Sales and Marketing Agreement with Kor Produce, LLC, a Pennsylvania company, and Onions 52, Inc., a Utah corporation (collectively "KORO52"). (Doc. 12-2.) Under the agreement, Thomson was to supply approximately 80% of its produce to KORO52 "for marketing and sale by KORO52 to customers throughout North America." (*Id.*) Thompson retained the exclusive right to market and sell its onions to its existing customers and was to provide a list of those customers to KORO52 upon execution of the agreement. (Doc. 12-2 at 1). KORO52's customers were then identified on their order manifest with a "ship to" designation, naming the receiving entity and destination of each shipment. (*Id.*) A search of Thomson's records of "ship to" addresses on order manifests received from KORO52, confirm that some of the products ordered by KORO52 were delivered to Montana. (Doc. 4 at ¶ 20.) Thomson's total sales to KORO52 which were delivered to Montana in 2020 constituted 1.02 percent of Thomson's gross sales. (*Id.*)

In September of 2020, the Centers for Disease Control and Prevention (CDC) issued a recall of red, white, and yellow onions grown and distributed by Thomson after a series of Salmonella outbreaks were linked to its farm and

products. (Doc. 7 at ¶ 4.) Approximately 1,012 cases of Salmonella infections were linked to the outbreak, including 63 cases in Montana. (*Id.* at ¶ 5.)

On July 7, 2020, Cameron ate a salad at Chico Hot Springs in Montana that contained recalled onions from Thomson's farm. (*Id.* at ¶ 6.) Subsequently, Cameron became extremely ill and was ultimately hospitalized because of contracting a Salmonella infection. (*Id.*)

On October 8, 2020, Cameron filed a complaint in State court alleging claims against Thomson for strict products liability, breach of warranty, and negligence. (Doc. 7 at ¶¶ 8-27.) She also seeks to represent a class of all Montana residents who consumed Thomson onions and suffered Salmonella infection. (*Id.* at ¶¶ 28-32.) The action was removed to this Court on February 11, 2021. (Doc. 1.) Thereafter, Thomson filed the instant motion. (Doc. 2.) Thomson argues the Court lacks personal jurisdiction over it, and therefore moves to dismiss Cameron's claims pursuant to Fed. R. Civ. P. 12(b)(2).

## II. DISCUSSION

### A. Legal Standard

When a defendant moves to dismiss a claim for lack of personal jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists. *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 741 (9th Cir. 2013) (internal citations omitted). Where the motion is based on

written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. A court's duty is to inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction, accepting the plaintiff's allegations as true. *Id.*

To exercise personal jurisdiction over a non-resident defendant in a diversity case, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process. *Data Disc Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). With respect to the first inquiry, this Court is bound to look to Montana law. *Haywood v. Travelers Indem. Co. of Am.*, 2006 WL 2860588, at *2 (D. Mont. October 3, 2016) (citations omitted).

The Montana Supreme Court has articulated a similar two-part test to determine the existence of personal jurisdiction: (1) the court must ascertain whether personal jurisdiction exists pursuant to Montana Rule of Civil Procedure 4(b)(1), Montana's long-arm statute; and (2) the court must assess whether asserting such jurisdiction is consistent with "traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (*citing Threlkeld v. Colorado*, 16 P.3d 359, 361

5

(Mont. 2000)); *See also Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 193 (Mont. 1990).

Montana's long-arm statute provides in relevant part:

All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:

. . .

(B) the commission of any act resulting in accrual within Montana of a tort action.

Mont. R. Civ. P. 4(b)(1)(B).[1]

The first sentence of Rule 4(b)(1) establishes the requirements for general jurisdiction. *Cimarron Corp.*, 67 P.3d at 260 (*citing Bi-Lo Foods Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157 (Mont. 1998). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017) (emphasis in original). The remainder of Rule 4(b)(1) establishes the requirements for specific jurisdiction. *Cimarron Corp.*, 67 P.3d at 260. In contrast to general jurisdiction, specific jurisdiction is more limited, and

---

[1] This is the only provision of Rule 4(b)(1) that Cameraon argues the Court may exercise specific jurisdiction under.

6

requires the controversy be directly related to the defendant's contacts with the forum. *Bristol-Myers*, 137 S.Ct. at 1780.

If the Court finds it may exercise specific jurisdiction under Mont. R. Civ. P. 4(b)(1), it must next determine whether such exercise is commensurate with the defendant's due process rights under federal law. *Bedrejo v. Triple E Can. Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (*citing Simmons v. State*, 670 P.2d 1372, 1376–77 (Mont. 1983); *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 255 P.3d 143, 149 (Mont. 2011)).

The Ninth Circuit has developed the following three-part due process test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff shows the first two prongs are met, the burden then shifts to the

defendant to demonstrate that the exercise of jurisdiction would be unreasonable. *Id.* An insufficient showing at any prong, requires dismissal. *Id.*

### B. General Jurisdiction

Thomson asserts there is no basis for exercising general jurisdiction over it because it is not present in Montana. Cameron concedes that there is no basis for asserting general jurisdiction in this case. (Doc. 12 at 3.) Accordingly, the Court may not exercise general jurisdiction over Thomson.

### C. Specific Jurisdiction

Thomson also argues that it is not subject to specific jurisdiction because it does not have sufficient minimum contacts with Montana. Thomson maintains that it has no presence in Montana, did not purposely avail itself of the privilege of conducting activities in Montana, that the claims do not arise out of or relate to its contacts with Montana, and that exercising jurisdiction over it in Montana would be unreasonable.

Cameron counters that the Court may properly exercise specific jurisdiction over Thomson. Cameron argues Thomson sought to exploit a market in Montana, her injuries are related to Thomson's acts of selling its produce in Montana through KORO52, and that it would be reasonable to exercise jurisdiction over Thomson.

///

///

8

        a.       <u>Montana's Long-Arm Statute</u>

Montana's long-arm statute permits the exercise of jurisdiction over any person as to a claim for relief arising from "the commission of any act resulting in accrual within Montana of a tort action." Mont. R. Civ. P. 4(b)(1)(B). "[I]n the context of a products liability claim, 'the injury causing event occurs (and the tort 'accrues') when the product injures the consumer.'" *Nomad Global Commc'n Sols. v. Hoseline, Inc.*, 2021 WL 1400983, *5 (D. Mont. April 14, 2021). Here, the injury causing event occurred in Montana when Cameron and the putative class members ate the contaminated onions. Accordingly, Montana's long-arm statute would at least facially permit the exercise of specific jurisdiction over Thomson. The Court must, therefore, determine whether the exercise of such jurisdiction comports with due process under the Ninth Circuit's three-part test. *Schwarzenegger*, 374 F.3d at 802. For the reasons set forth below, this Court finds it would not.

        b.       <u>Purposeful Availment/Purposeful Direction</u>

The first requirement under the Ninth Circuit's test for specific jurisdiction is purposeful availment of the privilege of conducting business in the forum, or purposeful direction of activities in the forum. This requirement ensures that the defendant will not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or

9

a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 475 (1985) (internal quotations and citations omitted).  Purposeful availment and purposeful direction, are distinct concepts.  *Schwarzenegger*, 374 F.3d at 802.  The Ninth Circuit has stated that "[a] purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* (internal citations omitted).  But it appears the purposeful direction test is typically reserved for intentional torts.  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007).  It also appears that courts generally apply the purposeful availment test to products liability cases.  *See e.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 878 (2011) (applying purposeful availment analysis in products liability case); *Hernandez v. City of Beaumont*, 2014 WL 6943881, *3-4 (C.D. Cal. Dec. 8, 2014) (applying purposeful availment analysis where claims were based on negligence and products liability); *Knoles v. Teva Pharmaceuticals USA, Inc.*, 2019 WL 5268928, *4 (N.D. Cal. Oct. 17, 2019) (same); *but see Anaya v. Machines de Triage et Broyage*, 2019 WL 1083783 (N.D. Cal. Mar. 7, 2019) (applying purposeful direction test in products liability action).  The Court will, therefore, apply the more general purposeful availment analysis here.[2]

---

[2] Even if the Court were to apply the purposeful direction test, it is not satisfied. The Ninth Circuit evaluates purposeful direction under the "effects test," derived from *Calder v. Jones*, 465 U.S. 783 (1984).  *Axiom Foods, Inc. v. Acerchem*

Purposeful availment is evaluated by determining whether the defendant availed itself of conducting activities in the forum by "perform[ing] some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). In conducting this analysis, the Supreme Court has cautioned that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre Machinery*, 564 U.S. at 882.

Here, the Court finds Thomson has not availed itself of the benefits and privileges of conducting activities within Montana. Thomson has no facilities or

---

*International Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Under this test, "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 1069 (*quoting Marvix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011)). Here, for the same reasons discussed below with regard to purposeful availment, there is scant evidence that Thomson "expressly aimed" any intentional act at Montana. "[M]ere untargeted negligence" is not enough. *Calder v. Jones*, 465 U.S. 783, 789 (1984). *See also Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."). Accordingly, even under the purposeful direction test, the Court lacks personal jurisdiction over Thomson.

property in Montana; none of its employees reside or are domiciled in Montana; it has no subsidiaries in Montana; and all of its activities – growing, harvesting, packing and selling, occur in California. (Doc. 4.) Thomson also does not grow any produce specifically for the Montana market; does not direct any of its advertising to specifically toward Montana residents or advertise in any publications or websites directed primarily toward Montana; and has no direct customers in Montana. (*Id.*; Doc. 12-1.)

 Cameron maintains that Thomson is subject to specific jurisdiction because it grows produce for a nationwide market, delivered onions into the stream of commerce and intentionally sought to exploit markets throughout North America by way of its agreement with KORO52. Also, by receiving "ship to" addresses from KORO52, Cameron argues Thomson knew that its produce was being distributed in Montana. But placing a product into the stream of commerce, without more, does not constitute an act purposefully directed toward the forum State. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). Furthermore, a defendant's awareness that the product may travel through the stream of commerce to the forum State does not "convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* Even if it was foreseeable to Thomson that its products might ultimately travel through the stream of commerce to Montana, foreseeability is not

the controlling criterion when assessing purposeful availment. The exercise of specific jurisdiction is appropriate only where the defendant has targeted the forum. *J. McIntyre Machinery*, 564 U.S. at 882. "[A]s a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state. *Id.* "[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 883.

Moreover, an intent to serve the United States market as whole, as opposed to the specific forum State, is insufficient to establish personal jurisdiction. *J. McIntyre Machinery*, 564 U.S. at 886 (finding a foreign defendant's agreement with a distributor to sell its machines in the United States and the fact that four of its machines ended up in New Jersey "may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market"); *Hernandez*, 2014 WL 6943881 at *4 ("[S]pecific jurisdiction requires that the non-resident defendant target the forum *state* and not the United States as a whole.") (emphasis in original); *Anaya*, 2019 WL 1083783 at *5 ("Even if the record establishes that Auger has directed conduct towards the United States as a whole, they do not show that Auger has directed any conduct toward California specifically."). Here, the agreement between Thomson and KORO52 demonstrates an intent to sell produce "throughout North America" generally. But it does not demonstrate that Thomson targeted Montana specifically.

Additionally, the quantity of Thomson produce that was shipped to Montana tends to negate purposeful availment. In 2020, Thomson's total sales to Montana, which were made exclusively through an agreement with an independent non-resident wholesaler, constituted only 1.02 percent of its gross sales. (Doc. 4 at ¶ 20.) Although certainly not determinative of the issue here, other courts have found that "arranging for shipment of less than 1% of products into a forum state at the direction of non-resident customers is insufficient to establish purposeful availment." *Rojas v. Hamm*, 2019 WL 3779706, *3 (N.D. Cal. Aug. 12, 2019). *See also Fernandez v. McDaniel Controls, Inc.*, 999 F.Supp 1365, 1368 (D. Haw. 1998) (finding non-resident defendant's shipment of approximately 1% of its products to Hawaii pursuant to a contractual agreement with a non-resident distributor was insufficient to show purposeful availment).

Nevertheless, Cameron argues the Court should exercise personal jurisdiction over Thomson based on the Supreme Court's recent ruling in *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court.* __ U.S. __, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021). Cameron asserts the Supreme Court simplified its personal jurisdiction jurisprudence in *Ford*. The Court's opinion in *Ford*, however, did not address or alter the analysis of purposeful availment under the first prong of the specific jurisdiction test. Rather, *Ford* considered the second prong of the specific jurisdiction test, which evaluates whether the claim arises out of or relates to the

defendant's forum-related activities. *See Nomad Global*, 2021 WL 1400983 at *4 ("To the extent *Ford Motor Co.* affects this Court's analysis, it only pertains to the relatedness element of the constitutionality prong of specific jurisdiction."); *Clarke v. Dutton Harris & Co.*, 2021 WL 1225881, *4 (D. Nev. March 31, 2021) (explaining that the Supreme Court "appears to have recently done away with" the Ninth Circuit's but-for test for determining relatedness).

In *Ford*, two cars produced by Ford were involved in accidents in Montana and Minnesota. Ford took the position that it was not subject to personal jurisdiction in either State court because the particular cars involved in each crash were not first sold in the forum State, nor were they designed or manufactured there. *Ford*, 141 S.Ct. at 1022. Ford argued personal jurisdiction should attach "only if the defendant's forum conduct *gave rise* to the plaintiff's claims." *Id.* at 1026 (emphasis in original). The Supreme Court rejected Ford's strict causation-only approach. *Id.*

The Court explained "our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.' The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Ford*, 141 S.Ct. at 1026 (emphasis in original, internal citation omitted). The Supreme Court then went on to find that Ford's extensive contacts

15

with the forum States demonstrated "a strong 'relationship among the defendant, the forum, and the litigation'" justifying the exercise of specific jurisdiction.[3]  *Id.* at 1028-29.

Important differences exist between *Ford* and the current case.  For one, Ford admitted to purposefully availing itself of the privileges of conducting activities in Minnesota and Montana.  *Id.* at 1026.  Therefore, the issue of purposeful availment was not before the Court.  As such, Cameron's reliance on *Ford* to argue for purposeful availment is not particularly helpful.  Second, to the extent *Ford* may shed light on the types of contacts that constitute purposeful availment, Thomson's activities here are a far cry from those in *Ford*.

The Supreme Court stated it was no wonder that Ford conceded purposeful availment.  *Id.* at 1028.  The Court noted Ford had targeted the forum States "by every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail" to urge Montanans and Minnesotans to buy its vehicles.  *Id.*  New and used Ford cars were available for sale throughout the States, at 36 dealerships in Montana and 84 in Minnesota.  *Id.*  Ford also worked "hard to foster ongoing

---

[3] Although the *Ford* Court adopted a broader interpretation of "relate to," it does not make specific jurisdiction appropriate at the slightest, distant connection between the defendant and the forum State.  The Supreme Court clarified that its holding "does not mean anything goes.  In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum."  *Ford*, 141 S.Ct. at 1026.

connections to its cars' owners" and profited from regularly maintaining and repairing Ford vehicles through its dealers, distributing replacement parts to its dealers and independent auto shops, and encouraging Montanans and Minnesotans to become lifelong Ford drivers. *Id.*

In contrast, Thomson simply does not target Montana in any of the ways described in *Ford*. Thomson does not market its products to Montana, nor direct any advertising toward Montana residents. Thomson does not produce end-consumer marketing materials or provide any promotional products to its wholesalers. It did not even develop a marketing budget to promote its products on the Internet in 2018 through 2020. Unlike in *Ford*, Thomson has no direct customers in Montana, and engages in no activities similar to Ford's service and repair activities. Further, there is no evidence Thomson has ever sought to foster an active or ongoing relationship with any Montana customers. Thomson, therefore, does not "systematically serve a market in Montana" in such a way that would demonstrate an intent to purposefully avail itself of the privilege of conducting activities here.

As the Supreme Court cautioned in *Ford*, "[w]e have long treated isolated or sporadic transactions differently from continuous ones." *Id.* at 1028 n.4. Here, Thomson's miniscule sales to Montana through an independent non-resident wholesaler do not rise to the level of purposeful availment to satisfy the first

17

requirement of the due process test. Accordingly, the Court may not exercise specific jurisdiction over Thomson.

Because Cameron has failed to satisfy the first prong of the due process test, the Court need not address the remaining relatedness and reasonableness prongs. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed."); *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."). The Court, therefore, recommends Thomson's Motion to Dismiss for lack of personal jurisdiction be granted.

## III. CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Thomson's Motion to Dismiss for lack of personal jurisdiction (Doc. 3) be **GRANTED**, and alternative request to transfer venue be **DENIED as moot**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 19th day of July, 2021

                                                    TIMOTHY J. CAVAN
                                                    United States Magistrate Judge